## United States District Court
## District of Massachusetts

```
_____
                              )
Tyson King,                   )
                              )
          Plaintiff,          )
                              )
     v.                       )
                              )       Civil Action No.
Prodea Systems, Inc., et al., )       19-10016-NMG
                              )
          Defendants.         )
                              )
_____ )
```

### MEMORANDUM & ORDER

**GORTON, J.**

Tyson King ("King" or "plaintiff") brings this action against his employer Prodea Systems, Inc. ("Prodea"), its subsidiary, Arrayent, Inc. ("Arrayent") and the following individuals: Amir Ansari (Chief Technology Officer of Prodea), Anousheh Ansari (Executive Chairwoman of Prodea), Hamid Ansari (Chief Executive Officer and President of Prodea), Shane Dyer (Founder of Arrayent) and Cyril Brignone (Chief Revenue Officer of Prodea and Former Chief Executive Officer of Arrayent) (collectively, "the Individual Defendants").  King seeks, in law and equity, unpaid wages and expense reimbursements pursuant to the Federal Fair Labor Standards Act, the Massachusetts Wage Act and contract law.

## I.   Background

### A.   Prodea and Arrayent

Prodea is a Delaware corporation engaged in the digital technology business and specializes in internet-based services. It maintains its principal place of business in Texas and, until mid-2018, had additional offices in California.

In July, 2017, Prodea acquired Arrayent as a wholly owned subsidiary.  It is a Delaware corporation with its principal place of business in Texas and a registered address in California.

Prodea and Arrayent (collectively, "the Corporate Defendants") have clients all over the world.  No client of the Corporate Defendants is, however, headquartered in Massachusetts.

Plaintiff avers that he was, at all relevant times, employed by both Corporate Defendants.  King maintained a Prodea email account and a Prodea business card which listed his business address as Arrayent's California address.  His paychecks were issued by Arrayent as his employer and he was paid with funds from a bank account registered to Arrayent.

### B.  **The Individual Defendants**

Three of the Individual Defendants (Amir, Anousheh and Hamid) are residents of the State of Texas.  Dyer and Brignone are California residents.

### C.  **King's Employment with the Corporate Defendants**

From January, 2018, until January, 2019, King was employed by the Corporate Defendants as Vice President of Sales.  His duties included soliciting and servicing the customers of the Corporate Defendants globally.

King, a Massachusetts resident, worked for the Corporate Defendants in Massachusetts from him home in Needham and from rented office space in Wellesley.  Although King submits that he never planned to move, the Corporate Defendants contend that he indicated an intention to relocate to Texas upon the commencement of his employment.  In any event, King was allowed to work remotely from Massachusetts after reporting to the Corporate Defendants that his wife had accepted a new job in the Commonwealth.

The Corporate Defendants secured Workers Compensation Insurance to cover King in Massachusetts but aver that they considered him a "non-Massachusetts employee."  Indeed, King's business card bore a California address.  Nevertheless, the

Corporate Defendants withheld Massachusetts state income taxes from King's salary.

In February, 2018, King requested Prodea's permission to rent office space in Wellesley, Massachusetts and worked out of that office from February through June, 2018.  Thereafter, King worked from his home office in Needham, Massachusetts.

King performed the majority of his work-related duties in Massachusetts but traveled on business on at least 18 occasions, including to Texas, California, Nevada, New York, Mexico and Turkey.  Nevertheless, King contends that his work in the Commonwealth facilitated substantial sales revenue for the Corporate Defendants.  That work included soliciting customers, planning meetings, communicating with customers, preparing sales agreements and proposals and managing a team of salespersons. King emphasizes that, on two occasions, an executive from Prodea and/or Arrayent traveled to Massachusetts to join King on sales networking meetings with potential Massachusetts-based clients.

King resigned his employment with the Corporate Defendants in January, 2019.  He avers that the Corporate Defendants owe him approximately $71,000 in unpaid, earned wages and approximately $16,000 in approved but unpaid reimbursable business expenses.  According to plaintiff, a human resources agent of the Corporate Defendants has admitted that King is owed

approximately $68,000 in unpaid wages in addition to vacation pay.

### D. **Procedural History**

Plaintiff filed a complaint against defendants in Massachusetts Superior Court in November, 2018. Defendants removed the case to this Court on diversity and federal question grounds in January, 2019. Defendants thereafter moved to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Before the Court ruled on that motion, plaintiff filed his first Amended Complaint, resulting in the Court denying the motion as moot. Defendants' subsequently filed the pending motion to dismiss plaintiff's Amended Complaint.

## II. **Motion to Dismiss For Lack of Personal Jurisdiction**

### A. **Legal Standard**

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, the Court will decide a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the Court applies the "prima facie" standard of review and takes the plaintiff's

> properly documented evidentiary proffers as true and
> construe[s] them in the light most favorable to
> [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir.
2016).  A plaintiff cannot, however, rely on "unsupported
allegations" and "must put forward evidence of specific facts to
demonstrate jurisdiction exists." Id. (internal citations
omitted).

Plaintiff's claims invoke both the Court's federal question
and diversity jurisdiction. 28 U.S.C. §§ 1331 and 1332.

### 1. **Personal Jurisdiction in Diversity Cases**

In a diversity suit, this Court acts as "the functional
equivalent of a state court sitting in the forum state." See
Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8
(1st Cir. 2009).  As such, to make a prima facie showing of
personal jurisdiction in diversity cases, the plaintiff must
demonstrate that the exercise of jurisdiction 1) is permitted by
the Massachusetts long-arm statute, M.G.L. c. 223A § 3, and 2)
coheres with the Due Process Clause of the Fourteenth Amendment
of the United States Constitution by showing that each defendant
has "minimum contacts" with Massachusetts. Daynard v. Ness,
Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st
Cir. 2002).

The Court's jurisdiction may be either "specific" or "general." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001). Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. Id. Such contacts must demonstrate that the defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998). General jurisdiction, on the other hand, exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." Swiss Am. Bank, 274 F. 3d at 618.

### 2. Personal Jurisdiction in Federal Question Cases

In federal question cases, the Due Process Clause of the Fifth Amendment of the United States Constitution requires only that a defendant maintain "minimum contacts" with the United States as a whole rather than with the forum state. Swiss Am. Bank, 274 F. 3d at 618. Plaintiff must, however, ground its service of process in a federal statute or rule. Id.

An out-of-state defendant in federal-question cases may be properly served if the federal statute pursuant to which the claim is brought provides for nationwide service of process. Fed. R. Civ. P. 4(k)(1)(C). Where, as here, the federal statute is silent on the availability of nationwide service of process,

such service is governed by the forum state's long-arm statute. Fed. R. Civ. P. 4(k)(1)(A).  Accordingly, this Court must conduct the same personal jurisdiction inquiry as in a diversity case under the Massachusetts long-arm statute. See Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d 947, 950 (1st Cir. 1984).

### 3. **Massachusetts Long-Arm Statute**

The Massachusetts long-arm statute provides, in relevant part, that a court may exercise personal jurisdiction

> over a person, who acts . . . as to a cause of action in
> law or equity arising from the person's (a) transacting any
> business in this commonwealth [or] (b) contracting to
> supply services or things in this commonwealth. . . .

M.G.L. c. 223A, § 3.

The requirements of the Massachusetts long-arm statute are substantially similar to (although potentially more restrictive than) those imposed by the Due Process Clause of the Fourteenth Amendment. See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (noting that "[r]ecently, however, we have suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution"). See also Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

B. **Application to the Corporate Defendants**

1. **Massachusetts Long-Arm Statute**

A court may exercise personal jurisdiction over a defendant under the Massachusetts long-arm statute when a claim arises from the defendant "transacting any business in [the] commonwealth." Mass. Gen. Laws c. 223A, § 3(a).  This requires the plaintiff to show that 1) the defendant attempted to participate in the Commonwealth's economic life and 2) the transacted business was a "but for" cause of the alleged harm. Tatro v. Manor Care, Inc., 625 N.E.2d 549, 552-53 (Mass. 1994).

Plaintiff identifies sufficient contacts of the Corporate Defendants with Massachusetts to satisfy the first requirement. The term "transacting" is construed broadly. Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017). Indeed, the volume of business transacted "need not be substantial but merely definite and perceptible." Diamond Grp., Inc. v. Selective Distribution Int'l, Inc., 998 N.E.2d 1018, 1022 (Mass. App. Ct. 2013).  Furthermore, a defendant need only "attempt" to transact business in Massachusetts. Cossart, 804 F.3d at 19. Such solicitation therefore need not be successful to meet the transacting business standard. Id.

Here, the Corporate Defendants jointly recruited and employed King in Massachusetts; sent representatives to

Massachusetts to assist him in soliciting business on at least two occasions; negotiated an employment contract with a Massachusetts resident that allowed him to work in Massachusetts; and complied with Massachusetts payroll and Workers Compensation Insurance laws.  These activities suffice to demonstrate at least an attempt by the Corporate Defendants to participate in the economic life of the Commonwealth. See Cossart, 804 F.3d at 18-19; Haddad v. Taylor, 588 N.E.2d 1375, 1377 (Mass. App. Ct. 1992); Donaldson v. Shapemix Music, LLC, 31 Mass. L. Rep. 580, *8 (2013).

The satisfaction of the second requirement of section 3(a) with respect to the Corporate Defendants is uncontroversial. The "but-for" standard is met where, as here, the plaintiff's claims relate to work performed in Massachusetts pursuant to an employment contract. See Cossart, 804 F.3d at 19.

### 2. Due Process Clause

Plaintiff must also demonstrate that the Court's exercise of personal jurisdiction over the Corporate Defendants comports with the United States Constitution. See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).  Plaintiff asserts that the Court has both general and specific jurisdiction over the Corporate Defendants.

### a.  General Jurisdiction

General jurisdiction exists when the defendant has engaged in "continuous and systematic" activity in the forum state, regardless of whether such activity is related to the plaintiff's claims. Mass. School of Law, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

Plaintiff proffers discrete and isolated contacts between the Corporate Defendants and Massachusetts, the majority of which relate to the hiring of plaintiff to work remotely in this Commonwealth.  Such contacts are not "continuous and systematic" and do not support plaintiff's claim for this Court's exercise of general jurisdiction over the Corporate Defendants.

### b.  Specific Jurisdiction

To support the Court's exercise of specific personal jurisdiction over the Corporate Defendants, plaintiff must make an "affirmative showing" that 1) the litigation relates to or arises out of the defendant's contacts with the forum state; 2) the defendant purposefully availed itself of the privilege of conducting business in the forum state; and 3) jurisdiction over the defendant is reasonable under the circumstances. Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995); Phillip Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

### i.  **Relatedness**

The relatedness inquiry is a "flexible, relaxed standard" that asks whether the plaintiff's claim "directly arises out of, or relates to" the defendant's activities in the forum state. Astro-Med, Inc., 591 F.3d at 9 (internal quotations omitted).

Plaintiff contends that the Corporate Defendants denied him due wages in violation of federal and state law as well as his employment contract.  There is no dispute that the Corporate Defendants recruited King in Massachusetts, negotiated his employment agreement and ultimately employed and allowed him to work here, and withheld Massachusetts taxes from his salary.  It is further uncontroverted that King earned the wages he claims have been wrongfully withheld as a result of his work in Massachusetts.  As a result, plaintiff's claim for unpaid wages arises directly from the contacts of the Corporate Defendants with King and, as a result, with Massachusetts.

### ii.  **Purposeful Availment**

To satisfy the second requirement, a plaintiff must demonstrate that the defendant's in-state contacts represent a "purposeful availment" of the privilege of conducting business in the forum state such that it may be

said the defendant invoked the benefits and protections of the forum state's laws and its involuntary presence in a court in the forum state was foreseeable. Astro-Med, Inc., 591 F.3d at 10.  The focus of this inquiry is on "voluntariness and foreseeability." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (internal quotations omitted).

The Corporate Defendants emphasize that they merely acquiesced to King's request to work remotely from Massachusetts for King's benefit.  Although that may be true, the Corporate Defendants nonetheless purposefully and intentionally engaged with King in Massachusetts through, among other actions, recruiting him, negotiating his employment contract, withholding state income taxes from his salary and soliciting business with his assistance in Massachusetts on at least two occasions.  Such conduct cannot reasonably be described as involuntary or unilateral. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 713 (1st Cir. 1996).  Consequently, the Corporate Defendants purposefully availed themselves of the privilege of conducting business in Massachusetts.

### iii.   **Reasonableness**

Finally, the plaintiff must demonstrate that the
Court's exercise of jurisdiction is reasonable.  The
Supreme Court has provided a set of "gestalt factors" to
consider in evaluating reasonableness, which include 1) the
defendant's burden of appearing; 2) the forum state's
interest in adjudication; 3) the plaintiff's interest in
convenient and effective relief; 4) the judicial system's
interest in obtaining the most efficient resolution; and
5) the shared societal interest in promoting fundamental
substantive social policies. Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 477 (1985).

Considering the gestalt factors, the Court's exercise
of jurisdiction over the Corporate Defendants is fair and
reasonable.  With respect to the first factor, courts
recognize that it is often burdensome to appear in a
foreign jurisdiction. See, e.g., Sigros v. Walt Disney
World Co., 129 F. Supp. 2d 56, 68-69 (D. Mass. 2001).  For
the first factor to have any significance, however, a
defendant must demonstrate that the exercise of
jurisdiction is "onerous in a special, unusual, or other
constitutionally significant way." Pritzker v. Yari, 42
F.3d 53, 64 (1st Cir. 1994).  The Corporate Defendants

proffer no reason that their burden of litigating in Massachusetts is unusually onerous.  This factor therefore weighs in favor of exercising jurisdiction.

As to the second factor, Massachusetts has a strong interest in adjudicating this dispute because it involves a Massachusetts resident alleging entitlement to unpaid wages earned in Massachusetts. See Melia v. Zenhire, Inc., 987 N.E.2d 580, 587 (Mass. 2012) (explaining that it is a fundamental policy of Massachusetts law that employees in the state be timely paid their wages).  Massachusetts resources may have been expended to support King as an unpaid Massachusetts resident and tax revenues on King's income should have been but were not paid to the Commonwealth. See id. at 594.

The third factor weighs in favor of exercising jurisdiction because King's chosen venue is Massachusetts and King and his family reside here. See Sawtelle, 70 F.3d at 1395 (according a degree of deference to the plaintiff's choice of forum with respect to the issue of convenience).

The fourth factor requires consideration of the judicial system's interest in an efficient resolution of the matter. Here, the potential witnesses reside in a number of jurisdictions, including Massachusetts, Texas and

California.  As is often the case, therefore, this factor
does not appear to cut in either direction. See, e.g., id.;
see also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d
201, 211 (1st Cir. 1994).

The final factor weighs in favor of exercising
jurisdiction.  The most salient interest at issue here is
the ability of Massachusetts to provide a convenient forum
for its residents to redress injuries inflicted by out-of-
state actors. See Sawtelle, 70 F.3d at 1395.

In summary, plaintiff has demonstrated that the
Court's exercise of jurisdiction over the Corporate
Defendants comports with the constitutional requirements of
personal jurisdiction.

## C. Application to the Individual Defendants

An individual's status as a corporate officer is
insufficient to establish the minimum contacts required to
subject the individual to personal jurisdiction in a
foreign forum. M-R Logistics, LLC v. Riverside Rail, LLC,
537 F. Supp. 2d 269, 279 (D. Mass. 2008) ("[I]t is
axiomatic that jurisdiction over the individual officers of
a corporation may not be based on jurisdiction over the
corporation." (internal quotations omitted)).  Although
Massachusetts courts have rejected the blanket assertion

that individuals acting in their official capacity are
shielded from suit in their individual capacity, "more than
mere participation" in the affairs of the corporation is
required. Id. at 281.

For purposes of exercising personal jurisdiction over
a corporate officer, the inquiry is whether the individual
was a "primary participant" in the alleged wrongdoing.
Calder v. Jones, 465 U.S. 783, 790 (1984).  This analysis
requires consideration of whether the individual "derived
personal benefit" or acted beyond the scope of his or her
employment with respect to contacts with the forum state.
M-R Logistics, LLC, 537 F. Supp. 2d at 280.

Plaintiff fails to allege any facts or proffer any
evidence, that the Individual Defendants personally
benefited from the Corporate Defendants' alleged failure to
pay King his wages.  Plaintiff similarly fails to
demonstrate that the Individual Defendants acted outside
the scope of their employment or primarily participated in
the alleged withholding of wages.  Accordingly, this Court
lacks personal jurisdiction over the Individual Defendants.

### III. <u>Motion to Dismiss For Failure to State a Claim</u>

#### A. <u>Legal Standard</u>

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. <u>Nollet v. Justices of Trial Court of Mass.</u>, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), <u>aff'd</u>, 228 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Langadinos</u> v. <u>Am. Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See <u>Nollet</u>, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a complaint, that doctrine is not applicable to legal conclusions. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662 (2009).  Threadbare recitals of legal elements which are

supported by mere conclusory statements do not suffice to state a cause of action. Id.  Accordingly, a complaint does not state a claim of relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

### B. **Application**

The Corporate Defendants, as the only defendants subject to this Court's personal jurisdiction, move to dismiss plaintiff's claims for payment of wages and failure to pay minimum wage pursuant to the Massachusetts Wage Act. M.G.L. c. 149, §§ 148-150 (payment of wages); M.G.L. c. 151 § 1 (minimum wage).  Defendant contends that both claims must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because Texas law rather than Massachusetts law governs King's employment law claims.

It appears the employment agreement between the parties is silent as to which law applies because neither party attempts to enforce a choice of law provision.  The Corporate Defendants mention a Texas choice of law provision included in their offer letter to King but that provision is expressly confined to the text of the offer letter itself.

In the absence of a contractual choice of law
provision, the Court resorts to traditional choice of law
principles under Massachusetts law. Servicios Comerciales
Andinos, S.A. v. General Elec. Del Caribe, Inc., 145 F.3d
463, 478 (1st Cir.1998) (explaining that district courts
hearing state law claims apply the choice-of-law rules of
the state in which the court sits); see also Erie Railroad
Co. v. Tompkins, 304 U.S. 64, 78 (1938).

Massachusetts employs a functional approach that
instructs courts to apply the law of the state with the
"most significant relationship" to the alleged conduct
considering a variety of factors, including: 1) the needs
of the interstate system; 2) the policies of the forum;
3) the policies of other interested states; 4) the
protection of justified expectations; 5) the basic policies
underlying the relevant field of law; 6) certainty,
predictability and uniformity of results; and 7) the ease
in determination and application of the applicable law.
Restatement (Second) of Conflict of Laws § 6 (Am. Law.
Inst. 1971); see also Sexual Minorities Uganda v. Lively,
960 F. Supp. 2d 304, 331 (D. Mass. 2013).

Applying the "most significant relationship" test,
this Court concludes that Massachusetts law applies.  King

is a Massachusetts resident and resided in Massachusetts
for the duration of his employment with the Corporate
Defendants.  Massachusetts taxes were withheld from King's
wages and paid to the Commonwealth.  The Corporate
Defendants even secured Massachusetts Workers Compensation
Insurance for King in compliance with Massachusetts wage
laws.

The Corporate Defendants' argument that Texas rather
than Massachusetts law has a more significant relationship
to King's claims strains credulity.  During his employment
with the Corporate Defendants, King travelled to Texas only
twice.  He did not reside in Texas nor pay taxes in Texas.
Furthermore, King was not a beneficiary of any protection
afforded to workers under Texas law.  The Corporate
Defendants emphasize that their primary place of business
is in Texas but fail to acknowledge that their former
Massachusetts-based employee claims the protection of
Massachusetts employment law. Accordingly, Massachusetts
law applies and the Corporate Defendants motion to dismiss
pursuant to Fed. R. Civ. P. 12(b)(6) will be denied.

**ORDER**

For the foregoing reasons, the motion of defendants to dismiss (Docket No. 19) is, with respect to the Individual Defendants, Amir Ansari, Anousheh Ansari, Hamid Ansari, Shane Dyer and Cyril Brignone, **ALLOWED**, but is otherwise **DENIED**.


**So ordered.**


                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge


Dated December 20, 2019